UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRELE VIDHJA,

Petitioner,

-against-

MATTHEW WHITAKER, et al.,

Respondents.

**ORDER**

19 Civ. 613 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Petitioner Prele Vidhja – a native and citizen of Albania – was denied asylum nearly fifteen years ago, and ordered removed from the United States. (Pet. (Dkt. No. 1) ¶ 3; Order of Supervision (Dkt. No. 1-1) at 2, 6) He commenced this habeas action on January 22, 2019, seeking (1) an order enjoining respondents from detaining him; and (2) a stay of removal while this action and a third motion to reopen his immigration proceedings are pending. (Pet. (Dkt. No. 1)) On March 1, 2019, Petitioner informed the Court that ICE intended to detain him for removal on March 7, 2019. The Court conducted a hearing on March 5, 2019, at which Petitioner requested an emergency stay of removal. (See Mar. 1, 2019 Pet. Ltr. (Dkt. No. 8); Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10); Mar. 5, 2019 Hrg. Tr.) For the reasons stated below, Petitioner's request for a stay of removal will be denied.

**BACKGROUND**

Because of "persecution that [Petitioner] faced under the Communist regime [in Albania], as well as persecution . . . because of his political involvement in Albania," Petitioner fled from that country and arrived in the United States in 1997. (Pet. (Dkt. No. 1) ¶ 7) Based on the alleged persecution Petitioner had suffered in Albania, he sought asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture. (Id.) On April

28, 2003, an immigration judge denied his asylum application, but granted Petitioner voluntary departure.[1] The Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision on July 23, 2004, and on January 30, 2006, the Second Circuit dismissed Petitioner's petition for review. (Id. ¶ 8) Because Petitioner did not leave the United States after he was granted voluntary departure, he became subject to a final order of removal. (Order of Supervision (Dkt. No. 1-1) at 2)

In October 2009, ICE placed Petitioner on an "Order of Supervision," which remains in effect today. (Pet. (Dkt. No. 1) ¶ 9; Order of Supervision (Dkt. No. 1-1)) The Order of Supervision states that ICE "will not effect [Petitioner's] removal at this time," and permits Petitioner to "be at large until the conclusion of your case and/or until the time you are granted relief," but requires, inter alia, that Petitioner "appear at the time and place specified, upon each and every request of [ICE], for identification and for deportation or removal." (Order of Supervision (Dkt. No. 1-1) at 2) Petitioner has reported regularly to ICE since the Order of Supervision was issued.[2]

In 2007 and 2010, BIA denied Petitioner's motions to reopen his immigration proceedings. (See Pet. (Dkt. No. 1) ¶¶ 9-10) On December 10, 2018, Petitioner filed a third

---

[1] Voluntary departure "enables aliens identified by the government as being illegally present in the United States to leave the country of their own accord without being forcibly removed by the government." Thapa v. Gonzales, 460 F.3d 323, 327 (2d Cir. 2006). Voluntary departure allows those illegally present in the country "'to choose their own destination points, to put their affairs in order without fear of being taken into custody at any time, to avoid the stigma and various penalties associated with forced removals . . . [and] facilitates the possibility of return to the United States.'" Id. at 328 (quoting Lopez-Chavez v. Ashcroft, 383 F.3d 650, 651 (7th Cir. 2004)).

[2] Petitioner has submitted a "Personnel Report Card" showing that he reported approximately every three months until 2012, and annually since then. (Order of Supervision (Dkt. No. 1-1) at 3)

motion to reopen, along with a request for a stay of removal pending the BIA's decision on his motion. (Id. ¶ 11) The motion to reopen is "based on new and material evidence and changed country conditions," and "include[s] an expert report on country conditions in Albania, as well as an updated application for asylum, which detail why Mr. Vidhja's case warrants reopening at this time." (Id.)

Petitioner informed ICE of his third motion to reopen when he reported to ICE pursuant to the Order of Supervision on December 19, 2018. (Id. ¶ 12) An ICE officer informed Petitioner that if his motion to reopen was not decided by January 23, 2019 – when Petitioner was next scheduled to report to ICE – he would be taken into custody. (Id.)

On January 22, 2019, Petitioner filed the instant habeas petition, contending that – pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001) – "Respondents['] intent to detain [him] is unconstitutional because the presumptively reasonable detention period has elapsed." (Pet. (Dkt. No. 1) ¶ 16) Petitioner seeks an order (1) barring Respondents from detaining Petitioner while his motion to reopen is pending; and (2) granting him a stay of removal pending the BIA's decision on his motion to reopen and this Court's decision on his petition. (Id. at 5)

On February 1, 2019, this Court issued an order directing Respondents to answer or otherwise move with respect to the petition within 60 days. (Order to Ans. (Dkt. No. 4)) Respondents then filed a pre-motion letter stating that they intended to move to dismiss on the grounds that this Court lacks jurisdiction to grant the relief Petitioner seeks. (Feb. 27, 2019 Govt. Ltr. (Dkt. No. 7))

On January 23, 2019, the BIA denied Petitioner's request for a stay of removal.[3] (Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10) at 1) On February 28, 2019, Petitioner's counsel received a "bag-and-baggage" letter[4] from ICE. (Mar. 1, 2019 Pet. Ltr. (Dkt. No. 8)) The letter directs Petitioner to report to ICE's New York office on March 7, 2019 "[f]or removal," and instructs Petitioner to bring with him, inter alia, "one piece of luggage not to exceed 44 pounds." (ICE Letter (Dkt. No. 1-1))

On Friday, March 1, 2019, Petitioner informed the Court of this letter and requested a conference before his report date. (Mar. 1, 2019 Pet. Ltr. (Dkt. No. 8); Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10)) On March 4, 2019, Petitioner submitted a letter brief seeking a stay of removal pending resolution of his motion to reopen. (Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10)) On March 5, 2019, the Court conducted a hearing concerning Petitioner's application for a stay of removal.

## DISCUSSION

The legal basis on which Petitioner is seeking a stay of removal is not entirely clear.[5] The Government contends that the Court lacks jurisdiction to grant a stay of removal, and further argues, inter alia, that the petition itself presents no basis for granting relief. (Feb. 27, 2019 Govt. Ltr. (Dkt. No. 7))

---

[3] Petitioner was not taken into custody on January 23, 2019, however. (Feb. 27, 2019 Govt. Ltr. (Dkt. No. 7) at 1 ("The petition . . . challenges petitioner's potential detention at some potential date in the future (although no longer on January 23, 2019, as petitioner was not detained on that date, nor has he been detained since that date)."); Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10) at 1 ("Petitioner is not presently in a physical ICE detention facility."))

[4] A "bag-and-baggage" letter is a notice to surrender for deportation. Gao v. Gonzales, 481 F.3d 173, 175 (2d Cir. 2007).

[5] Petitioner's letter brief consists primarily in summaries of three recent cases in which district courts concluded they had jurisdiction to hear immigration-related habeas petitions and enter stays of removal. (Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10))

"[F]ederal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking." Pan v. Whitaker, 351 F. Supp. 3d 246, 250 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 12(h)(3); Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 316 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62-63 (2d Cir. 2009)).

Section 106 of the REAL ID Act of 2005, Pub.L. No. 109-13, Div. B, 119 Stat. 231, 310-11 (codified at 8 U.S.C. § 1252), "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation." De Ping Wang v. Dep't of Homeland Sec., 484 F.3d 615, 615-16 (2d Cir. 2007). Two subsections of 8 U.S.C. § 1252 – Sections 1252(a)(5) and 1252(g) – are of particular relevance here. The Court concludes that, under these provisions, it lacks jurisdiction over Petitioner's request for a stay of removal.

## I. JURISDICTION UNDER 8 U.S.C. § 1252(a)(5)

8 U.S.C. § 1252(a)(5) provides that, "[n]otwithstanding any other provision of law," including "any . . . habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The provision defines "judicial review" to "include habeas corpus review pursuant to . . . any . . . habeas corpus provision." Id. "The Second Circuit has construed § 1252(a)(5) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even 'indirectly challeng[es]' an order of removal." Noor v. Homan, No. 17 Civ. 1558 (WFK), 2018 WL 1313233, at *3 (E.D.N.Y. Feb. 27, 2018) (citing Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) (per curiam)); see also Vasquez v. United States, No. 15 Civ. 3946 (JGK), 2015 WL

4619805, at *3 (S.D.N.Y. Aug. 3, 2015) ("Section 1252 plainly requires direct challenges to final orders of removal to be filed in the appropriate court of appeals, and it also applies to independent claims that indirectly challenge removal orders." (citation omitted)). "However, 'a suit brought against immigration authorities is not per se a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking.'" S.N.C. v. Sessions, No. 18 Civ. 7680 (LGS), 2018 WL 6175902, at *4 (S.D.N.Y. Nov. 26, 2018) (quoting Delgado, 643 F.3d at 55)).

Here, neither Petitioner nor Respondents makes more than fleeting reference to Section 1252(a)(5). Numerous courts in this Circuit have held, however, that a request for a stay of removal constitutes a "challenge to a removal order," and that accordingly district courts lack jurisdiction to grant such relief. See, e.g., Vasquez, 2015 WL 4619805, at *4 ("[Petitioner] argues that, in this case, she is not challenging the removal order; she is challenging the constitutionality of the actions of federal officials following her detention. But the relief sought by the current motion is a stay of her removal. Accordingly, whatever the merits of her underlying claims, the Court does not have jurisdiction to grant this motion"); Joseph v. U.S. Attorney Gen., Dep't of Homeland Sec., No. 17 Civ. 5008 (PKC), 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal." (citing Scott v. Napolitano, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009); Al-Garidi v. Holder, No. 09 Civ. 6160 (DGL), 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal."))); see also McRae v. Sessions, No. 16 Civ. 6489 (FPG), 2018 WL 5960858, at *2 (W.D.N.Y. Nov. 14, 2018)

("Petitioner's arguments on the merits of his removability is a direct challenge to the removal order, and consequently, this Court lacks jurisdiction under § 1252(a)(5) to consider his argument or to grant a stay of removal on that basis."). The Court finds the reasoning of these cases persuasive, and concludes that pursuant to Section 1252(a)(5), it lacks jurisdiction to grant Petitioner a stay of removal.

## II. JURISDICTION UNDER 8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides that, "[n]otwithstanding any other provision of law," including "any . . . habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Supreme Court has "'narrow[ly] read[ ]' § 1252(g) to 'appl[y] only to three discrete actions that the Attorney General may take' – i.e., 'h[is] "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders."'" Michalski v. Decker, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018)) (quoting Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482, 486 (1999) (emphasis in American-Arab Anti-Discrimination Committee)).

Here, Petitioner's request for a stay of removal pending resolution of his motion to reopen falls squarely within one of the "three discrete actions" to which Section 1252(g) applies: the execution of removal orders. Accordingly, Section 1252(g) also deprives this Court of jurisdiction to grant the stay of removal Petitioner seeks.

Courts addressing factual circumstances strikingly similar to those presented in this case have reached the same conclusion. In Nken v. Chertoff, 559 F. Supp. 2d 32 (D.D.C. 2008), for example, petitioner – like Vidhja – "filed his third motion to reopen with the BIA,

based on a claim of changed conditions in his home country." Nken, 559 F. Supp. 2d at 34. While that motion to reopen was pending, the petitioner – who had been "placed . . . [on] a form of supervised parole" – was detained and informed that he would be deported in a few days' time. The petitioner then filed an emergency petition seeking "injunctive relief to stay [his] impending removal, primarily in order to allow the BIA to consider and resolve Petitioner's pending motion to reopen prior to any removal."[6] Id. at 33-34.

The district court concluded that it had no jurisdiction under Section 1252(g): "The Emergency Petition in this matter seeks a stay in order to avoid execution of the BIA's final order of removal. . . . Reno certainly concludes that § 1252(g) does not apply to all 'decisions or actions that may be part of the deportation process,'" but "Reno also explicitly finds that § 1252(g) applies to a 'decision or action' to 'execute removal orders,' which is precisely what Petitioner seeks to stay with his Emergency Petition[]." Id. at 36. The Nken court also rejected the petitioner's attempt to avoid Section 1252(g) by styling his petition as a constitutional challenge addressing aspects of the motion to reopen process: "Petitioner's description of his claim overlooks the fact that the emergency relief he seeks is a stay of the BIA's final order of removal, . . . which at bottom would require this Court to review that final order." Id.

Similarly, in Xiaoyuan Ma v. Holder, 860 F. Supp. 2d 1048 (N.D. Cal. 2012), the petitioner sought a stay of removal while her motion to reopen was pending. The district court "conclude[d] that Petitioner's relief – requesting a stay of the execution of the BIA's removal order – falls within the ambit of section 1252(g)," since "the relief she seeks – and the claim(s)

---

[6] As here, the petitioner in Nken had sought a stay of removal from the BIA, and the BIA denied that request shortly after petitioner commenced his habeas action. Nken, 559 F. Supp. 2d at 34.

upon which that relief is based – is one that is connected directly and immediately to a decision or action by the Attorney General to execute a removal order." Xiaoyuan Ma, 860 F. Supp. 2d at 1059 (internal quotation marks omitted).

Petitioner cites several recent cases in which courts have found Section 1252(g) inapplicable. (See Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10) at 2-3 (citing Devitri v. Cronen, 289 F. Supp. 3d 287 (D. Mass. 2018); Sied v. Nielsen, No. 17 Civ. 06785 (LB), 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018); You, Xiu Qing v. Nielsen, 321 F. Supp. 3d 451, 456 (S.D.N.Y. 2018)) These cases involve circumstances not present here, and accordingly are not persuasive.

Devitri and Sied, for example, concern habeas petitions in which the petitioner alleged a lack of access to the motion to reopen process. Indeed, the Sied court found that Section 1252(g) was not applicable because that provision does not "prevent [a] district court from exercising jurisdiction over . . . due process claims [that] do not arise from a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien, but instead constitute general collateral challenges to unconstitutional practices and policies used by the agency." Sied, 2018 WL 1142202, at *21 (internal quotation marks and citation omitted). Vidhja has made no such due process claim here. Moreover, the Devitri and Sied courts emphasized that petitioners had offered substantial evidence that application of Section 1252(g) to bar the district court's exercise of jurisdiction would violate the Suspension Clause. See Devitri, 289 F. Supp. 3d at 292, 294, 296 (motion to reopen and review procedure violated the Suspension Clause as applied to petitioners, where "it is likely that Petitioners will be deported before their motions to stay and motions to reopen are considered by the BIA and the Court of Appeals," and where petitioners had presented unrebutted evidence that they faced a threat of persecution or torture); Sied, 2018 WL 1142202, at *10, *22 ("Here . . . the

government concedes that Mr. Sied would not be able to pursue his motion to reopen if he were removed to Eritrea."). Here, Petitioner has offered only conclusory allegations that he will face persecution if deported.

You, Xiu Qing v. Nielsen also does not assist petitioner. In that case, petitioner argued that his arrest and detention violated the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause, and sought a stay of removal pending adjudication of his habeas action. In deciding that it had jurisdiction despite Sections 1252(a)(5) and 1252(g), the district court reasoned that "the question before the Court . . . is whether the way Respondents acted accords with the Constitution and the laws of this country. Whether Respondents' actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g). . . . Respondents are empowered to remove Petitioner at their discretion. But they cannot do so in any manner they please." Id. at 457. Here, however, Petitioner's request for an emergency stay of removal is not premised on the manner in which Respondents are executing removal.

The Court concludes that, pursuant to Section 1252(g), it lacks jurisdiction to grant Petitioner a stay of removal.

## III. THE UNDERLYING HABEAS PETITION HAS NO LIKELIHOOD OF SUCCESS

In his habeas petition, Petitioner contends that – were he to be detained by Respondents – any such detention would be unconstitutional, "because the presumptively reasonable detention period has elapsed." (Pet. (Dkt. No. 1) ¶ 16)[7]

[7] Petitioner's request for an emergency stay is not premised on this argument; indeed, the argument is not mentioned at all in Petitioner's letter brief. (See Mar. 4, 2019 Pet. Ltr. (Dkt. No. 10) at 3; Mar. 5, 2019 Hrg. Tr.)

In determining whether to grant a stay of removal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted).

In arguing that "Respondents['] intent to detain [him] is unconstitutional because the presumptively reasonable detention period has elapsed," Petitioner relies on Zadvydas v. Davis, 533 U.S. 678 (2001). (Pet. (Dkt. No. 1) ¶ 16) In that case, the Supreme Court held that aliens detained beyond the 90-day statutory removal period may not be detained indefinitely, and that detention for six months beyond the 90-day removal period is presumptively unreasonable.

The Zadvydas court emphasized that "the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions" was not at issue. Zadvydas, 533 U.S. at 695. Instead, the Zadvydas court was addressing circumstances in which "removal is not reasonably foreseeable." Where an alien has been held six months beyond the 90-day statutory period, a "court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Id. at 699-700.

In his habeas petition, Petitioner argues that Respondents' detention of him would be unconstitutional under Zadvydas, because "the presumptively reasonable detention period has elapsed. . . . [T]he government can detain an alien ordered removed for the initial 90 day[]

[removal period] . . . and thereafter only for a period reasonably necessary to secure the alien's removal." (Pet. (Dkt. No. 1) ¶ 16) According to Petitioner, his removal period began on July 23, 2004, when the BIA affirmed the immigration judge's decision denying his asylum application, and ended six months after his appeal was denied – a date more than fourteen years ago. (Id.)

Zadvydas does not address such circumstances, however. That case addresses aliens subject to removal who have been detained for more than six months after the 90-day statutory removal period. Zadvydas does not address aliens such as Petitioner, who have been under an order of supervision for many years. As to such orders of supervision, courts have concluded that there is no time limit. See Lawrence v. Gonzales, No. 12 Civ. 4076 KBF, 2013 WL 1736529, at *4 (S.D.N.Y. Apr. 19, 2013) ("Lawrence is not, however, currently being detained. He is merely subject to supervised release – and lenient supervised release at that. Thus, on its face, Zadvydas' language does not cover Lawrence's supervision. . . . No applicable legal authority imposes any time limit on ICE supervised release."); Yusov v. Shaughnessey, 671 F. Supp. 2d 523, 528 (S.D.N.Y. 2009), aff'd sub nom. Yusov v. Shaughnessy, 396 F. App'x 780 (2d Cir. 2010) ("The 'few courts' that have examined the constitutionality of potentially indefinite supervision after Zadvydas have concluded that the government possesses wide latitude in supervising deportable aliens."); Kalombo, 2009 WL 1788589, at *5 ("Detention entails a complete deprivation of liberty of movement. Supervision, on the other hand, is substantially less onerous and, if the conditions imposed are reasonably related to legitimate enforcement needs, may be appropriate even if indefinite.").

Because Petitioner's unauthorized detention argument finds no support in the law, he has not shown a likelihood of success on the merits of his habeas petition.[8]

## CONCLUSION

For the reasons stated above, Petitioner's request for an emergency stay of removal is denied.

Dated: New York, New York
March 6, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge

[8] Petitioner has also not shown a likelihood of success on the merits of his motion to reopen. As discussed above, Petitioner has offered only conclusory allegations in support of his argument that changed conditions in Albania now warrant asylum relief.